IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Freda Lydia, ) | |
| ) | Civil Action No.: 1:15-795-MBS-SVH |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act (the "Act"), codified as amended at 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security ("the Commissioner").

**I.   PROCEDURAL HISTORY**

Plaintiff Freda Lydia protectively filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on September 20, 2005, alleging disability since May 1, 2005. R. 69, 70, 94–99, 100–06. Plaintiff's applications were denied initially and upon reconsideration. R. 73–77, 81–82, 84–85. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was initially held on January 22, 2009, before ALJ Gregory Wilson. R. 30–68. The ALJ issued an unfavorable decision dated March 12, 2009, in which he concluded that the Plaintiff was not "disabled" as defined in the Social Security Act. R. 6–22. Accordingly, the ALJ determined that Plaintiff was not entitled to DIB or SSI under Sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act. Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on April 15, 2011, making the ALJ's decision the "final decision" for the purposes of judicial review. R. 1–5.

Plaintiff subsequently filed a complaint in this court on June 14, 2011, pursuant to 42 U.S.C. § 405(g). R. 590–91. On July 25, 2012, the Honorable Bruce H. Hendricks, United States Magistrate Judge issued a Report and Recommendation recommending that the ALJ be reversed and remanded. *Lydia v. Astrue*, No. 11-1453, 2012 WL 3304107 (D.S.C. July 25, 2012). On August 13, 2012, the Honorable David C. Norton, United States District Judge, issued an order adopting the Magistrate Judge's Report and Recommendation, reversing and remanding the case to the agency. *Lydia v. Astrue*, No. 11-1453, 2012 WL 3308108 (D.S.C. Aug. 13, 2012). Judge Norton, through adopting the Magistrate Judge's Report and Recommendation, found that the ALJ failed to explain his reasons for concluding that Dr. Ruffing's opinion was inconsistent with his examination. *Id.* at *1 (adopting 2012 WL 3304107 at *8–9). The Appeals Council remanded the case to the ALJ on May 21, 2013. The ALJ held a second hearing on November 21, 2013, and a third hearing on July 10, 2014. R. 457–514, 515–65. ALJ again issued an unfavorable decision on December 5, 2014, which became the final decision of the Commissioner for the purposes of judicial review. R. 391–456. Plaintiff thereafter brought this action pursuant to 42 U.S.C. § 405(g). ECF No. 1.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Shiva V. Hodges, for a Report and Recommendation. On January 25, 2016, the Magistrate Judge filed a Report and Recommendation in which she recommended the Commissioner's decision to deny benefits be reversed. ECF No. 18. The Commissioner filed objections to the Report and Recommendation on February 4, 2016. ECF No. 20. Plaintiff filed a response to the Commissioner's Objections on February 22, 2016. ECF No. 22.

The matter is now before the court for review of the Magistrate Judge's Report and Recommendation. The court is charged with making a *de novo* determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b). After a careful review of the record in this matter, the Report and Recommendation, and the applicable legal standards, the court finds that the Report and Recommendation provides an accurate summary of the instant case. The court adopts all portions of the Report and Recommendation, reverses the decision of the Commissioner, and remands the matter to the agency, as further explained below.

## II.  STANDARD OF REVIEW

The court is authorized to review the Commissioner's denial of benefits under 42 U.S.C. § 405(g); however, the court's role is a limited one. Section 405(g) provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). The court must not "try the case *de novo*" and it is "immaterial that the evidence before [the court] will permit a conclusion inconsistent with [the ALJ]." *Id.*; *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971). However, this does not require the "the findings of the administrative agency [be] mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the

[Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157–58. In reviewing the decision of the Commissioner, the court must "closely scrutinize the administrative proceedings to insure a result consistent with congressional intent and elemental fairness." *Flack*, 413 F.2d at 280.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. *See e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 460 (1983). An examiner must consider whether the claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work; and (5) has an impairment that prevents her from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

### III. DISCUSSION

Plaintiff was thirty-seven years old on her alleged disability onset date and was forty-seven years old at the time of the ALJ's most recent unfavorable decision regarding her applications for DIB and SSI. R. 448. She has a high school diploma, a cosmetology license, and

has worked in the past as a winder, spinner, creeler, cashier, and stock clerk. R. 35, 59, 136. Plaintiff alleges disability beginning May 1, 2005. R. 94. Plaintiff alleges both physical and mental disabilities. Plaintiff alleges physical problems with her hands, back, and knees.[1] R. 397. Further, Plaintiff asserts that she suffers from depression, post-traumatic stress disorder, and generalized anxiety disorders. R. 208–09, 233–49, 268, 278–79, 309–11, 315, 318, 340–46, 398, 698–700, 722–25. Plaintiff's medical history has been discussed at length in the Report and Recommendation; therefore, the court incorporates the Report and Recommendation's factual summary. ECF No. 18 at 2–18.[2] Plaintiff's history of alleged mental disability may be summarized as follows. Beginning with her physical injury in late 2004, Plaintiff alleges she has become more withdrawn, anxious, and depressed because she cannot work. R. 43–45; 471. Plaintiff further alleges that past trauma, including her father committing suicide in front of her and an abusive marriage, have contributed to her depression and anxiety. R. 43–45, 49. Plaintiff has been inconsistent in her treatment of her mental health issues but alleges that she has been unable to afford treatments as she no longer has insurance coverage. R. 46, 478, 480–83.

The Commissioner asserts specific objections to the Report and Recommendation. The court will review each of these objections in turn.

    A.  <u>The Commissioner's Objections</u>

        1.  <u>Objection One: Medical Opinion of Dr. Klickman, Treating Examiner</u>

The Commissioner objects to the Magistrate Judge's finding that the ALJ failed to adequately consider the consistency of Dr. Klickman's observations with the other evidence in

---

[1] As Plaintiff has not challenged the ALJ's findings regarding her physical functional capabilities, the court will limit its discussion to the opinions regarding alleged mental disabilities. ECF No. 18 at 37.

[2] As always, the Court says only what is necessary to address such objections against the already meaningful backdrop of a thorough Report and Recommendation of the Magistrate Judge, incorporated entirely by specific reference herein, to the degree not inconsistent.

the record. ECF No. 20 at 4. The Commissioner argues that the ALJ properly weighed Dr. Klickman's opinion as having little weight due to Dr. Klickman's short time treating Plaintiff and because Dr. Klickman last saw Plaintiff more than two years prior to creating his second report summarizing Plaintiff's ailments and physical appearance. *Id.* Plaintiff responds that this mischaracterizes the Magistrate Judge's finding that the ALJ failed to consider consistency of Dr. Klickman's opinion with Plaintiff's other treating physicians. ECF No. 22 at 3. According to Plaintiff, the Magistrate Judge did not assert that Dr. Klickman's opinion by itself needed additional consideration. *Id.*

    2.   <u>Objection Two: Medical Opinion of Dr. Ruffing, Consultative Examiner</u>

The Commissioner objects to the Magistrate Judge's finding that the ALJ did not adequately consider Dr. Ruffing's reports. ECF No. 18 at 40–46. The Commissioner asserts that the ALJ sufficiently considered Dr. Ruffing's reports but did not find the reports consistent with Plaintiff's reported daily activities or presentation. ECF No. 20 at 7–9. Plaintiff counters that this is an improper reading of Dr. Ruffing's findings, who noted the same examples of activities of daily living but found that Plaintiff would have difficulty focusing and controlling her emotions for an eight-hour workday. ECF No. 22 at 4.

    3.   <u>Objection Three: Medical Opinion of Dr. Morton, Consultative Examiner</u>

The Commissioner objects to the Magistrate Judge's finding that the ALJ did not adequately consider the consistency of Dr. Morton's opinion of Plaintiff's mental disabilities with the record. The Commissioner argues that the ALJ provided "at least seven valid reasons" for giving little weight to Dr. Morton's opinion, specifically, the marked difference between Dr. Morton's and Dr. Tomarchio's opinions. ECF No. 20 at 9–10. Plaintiff asserts that the Magistrate Judge's determination was proper as Dr. Tomarchio was conducting a physical, not mental

examination, and the ALJ should have given less weight to his opinion. ECF No. 22 at 7. Plaintiff also asserts that Dr. Tomarchio and Dr. Morton's reports are not inconsistent with one another. *Id.* Further, Plaintiff points to the consistency of Dr. Morton's opinion with the rest of the record. *Id.* at 8.

    4. <u>Objection Four: Improper HALLEX Compliance and Testimony of Dr. Jonas, Non-Examining Physician</u>

Finally, the Commissioner objects to the Magistrate Judge's finding that the use of Dr. Jonas prejudiced the Plaintiff. While acknowledging that Dr. Jonas was called out of order, in violation of the SSA's Hearing, Appeals, and Litigation Law Manual ("HALLEX"), the Commissioner asserts that Plaintiff fails to show bias because the ALJ had "plausible, rational reasons for soliciting Dr. Jonas's services." ECF No. 20 at 12. Further, the Commissioner asserts that Dr. Jonas did no more than "note the obvious flaws in the opinions of Drs. Ruffing and Morton." *Id.* at 13. Plaintiff counters that she was prejudiced because Dr. Jonas was used to reject all consistent opinions of disabling limitations, even those offered by the ALJ's chosen consultative experts. ECF No. 22 at 12. Further, Plaintiff raises prior concerns with Dr. Jonas in cases similar to hers, *i.e.*, calling Dr. Jonas to testify in cases on remand from a district court and Dr. Jonas's testimony that capacity to handle finances was inconsistent with a severe mental disability.

  B. <u>Analysis of Objections</u>

    1. <u>The ALJ Failed to Follow the Treating Physician Rule</u>

When viewed as a whole, the ALJ failed to properly weigh the opinions of the treating, consultative, and testifying mental health experts. Under the Treating Physician Rule, the ALJ is to accord weight based upon the (1) examining relationship; (2) treatment relationship; (3) support of diagnoses by medical signs and laboratory tests; (4)

consistency with the overall record; (5) physician or expert specialization; and (6) other factors. 20 C.F.R. §404.1527(c). Relating to "treatment relationship," the ALJ is to consider the length of the treatment relationship and frequency of the examination. *Id.* at § 404.1527(c)(2)(i). Further, the ALJ is to consider the type of examination the treating physician was providing. *Id.* at § 404.1527(c)(2)(ii). The Code of Federal Regulations provides the following example: [I]f your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for neck pain." *Id.* The Code of Federal Regulations further states that "[o]ther factors" to consider include "the amount of understanding of our disability programs" and "the extent to which an acceptable medical source is familiar with the other information in your case record." *Id.* at § 404.1527(c)(6).

        a.   Physician-Patient Relationship

Dr. Klickman primarily treated Plaintiff for physical ailments but prescribed Cymbalta for her depression and referred her to mental health counseling in June 2006 when the "severity of her illness [exceeded his] ability to take care of her." R. 268. Dr. Ruffing examined Plaintiff on two separate occasions, before both of her Social Security headings in March 2006 and January 2009, and noted that Plaintiff's "condition has been refractory to psychiatric and psychological treatment efforts." R. 346. Dr. Morton examined Plaintiff in February 2013 to determine whether she was mentally disabled.[3] R. 719–25. Dr. Morton's findings are summarized as follows: Plaintiff has an extreme

---

[3] While the ALJ notes that a portion of the weight assigned to the doctors was due to Dr. Jonas looking at the entire record while Dr. Morton did not (Tr. 439, 722), the ALJ's assumption is unsupported by the record. ECF No. 18 at 50 n.8. As noted in the Report and Recommendation, Dr. Morton's comment regarding Dr. Esquivel's note was likely because it was the most recent, not because it was the only evidence Dr. Morton reviewed. *Id.*

limitation in her ability to interact appropriately with the public and with supervisors (R. 720); Plaintiff has a marked limitation in her ability to make judgments in complex situations, relate to coworkers, and respond to work-routine changes; (R. 719–20); Plaintiff has a moderate limitation in her ability to make simple judgments, understand and carry out complex instructions (R. 719).

Drs. Ruffing and Morton were appointed by the Commissioner to determine whether Plaintiff's disability was sufficiently severe as to prohibit her from engaging in substantial gainful employment. *See* R. 338–39 (analyzing Plaintiff's disability in terms of ability to accomplish work-related tasks as a percentage of the day); R. 719–21 (rating Plaintiff's ability to accomplish work-related tasks as a result of her mental disability). Dr. Jonas is a non-treating, non-examining physician, and his opinion is entitled to the lowest level of weight and consideration. Drs. Ruffing and Morton were not treating physicians but they were examining physicians and their opinions were consistent with the overall record; however, the ALJ accorded more weight to Dr. Jonas, the non-treating, non-examining physician. *Compare Creekmore v. Colvin*, No. 14-3019, 2015 WL 4771947 (D.S.C. Aug. 12, 2015), at *5–7, *with* R.R. 441–43. The ALJ's assertion that Dr. Jonas's specialty is psychiatry is insufficient to accord him more weight than Drs. Ruffing and Morton, who are both psychologists.

Further, the court notes that Dr. Jonas's credibility has been called into question by numerous courts, and was called into question at the hearing. *See, e.g.*, *Creekmore*, 2015 WL 4771947, at *7, *7 n.1 (noting numerous cases where Dr. Jonas has been used to discredit treating physicians and was accorded improper weight), *Smith v. Astrue*, No. 09-0471, 2011 WL 5326844, at *9 (W.D.N.C. Nov. 4, 2011) (noting improper weight

accorded to Dr. Jonas); *Roman v. Astrue*, No. 10-3085, 2012 WL 4566128 at *10 (E.D.N.Y. Sept. 28, 2012) (noting improper application of "Treating Physician Rule" as applied to Dr. Jonas); *Tobler v. Colvin*, No. 13-1095, 2014 WL 4187372 (N.D. Ala. Aug. 20, 2014) (noting ALJ accorded improper weight to Dr. Jonas's testimony); R. 529 (objecting to use of Dr. Jonas in violation of HALLEX and stating "I can tell you what Dr. Jonas is going to say almost verbatim as he's testified in every other case.").

Accordingly, the court finds that the Commissioner improperly applied the Treating Physician Rule.

2. Consistency of Opinions with the Overall Record

While Plaintiff's various doctors treated her for short periods of time, the opinions of each of the treating and consultative doctors were consistent with one another. The Magistrate Judge correctly summarized as follows:

> Dr. Klickman stated Plaintiff "always presented" as "sad, tearful, overly anxious, and worried." R. at 337. While Dr. Klickman's statement that it was possible Plaintiff's pain may distract her from work tasks was speculative and failed to reflect concrete vocational terms, his observation as to how Plaintiff "always presented" was relevant to consideration of other records that showed the same presentation. *See* R. at 210 (clinician noted Plaintiff to be tearful during session), 217 (Dr. Mourtada noted Plaintiff was crying during the exam), 234 (Dr. Ruffing indicated Plaintiff's presentation was marked by tension, sadness, and tearfulness and that she had significant difficulty regulating and controlling her emotions), 316 (Dr. Edwards described Plaintiff as depressed and tearful), 327–28 (Dr. Wasson noted that Plaintiff was anxious and depressed and assessed acute anxiety and acute depression), 344 (Dr. Ruffing indicated Plaintiff generally demonstrated poor emotional regulation and control during the exam), 722 (Dr. Morton observed that Plaintiff had an unstable affect and a depressed mood and that she cried throughout the evaluation).

ECF No. 18 at 41. Plaintiff routinely presented as tearful and depressed for over nine years. The only exceptions were Dr. Tomarchio's physical examination in January 2014 (R. 707–718) and Dr. Jonas's non-examining testimony in July 2014 (R. 549–50). The

ALJ's reliance on Plaintiff's appearance during her physical examination with Dr. Tomarchio is insufficient to support his assertion that Plaintiff is emotionally stable. As noted in "nature [] of treatment relationship," an examination within the doctor's specialty is to be accorded more weight. *See* 20 C.F.R. § 404.1527(c)(2)(ii). Here, the ALJ should consider whether to accord more weight to Dr. Morton's analysis of mental health as he is a psychologist, than to Dr. Tomarchio's opinion as an orthopedic examiner.

Furthermore, the ALJ's conclusion that Plaintiff's activities of daily living demonstrated an ability to consistently work is not supported by substantial evidence. The ability to accomplish various activities of daily living does not necessarily equate to an ability to engage in substantial gainful activity. *See Higginbotham v. Califano*, 617 F.2d 1058, 1060 (4th Cir. 1980) (noting that the plaintiff's capacity to "at her own pace and in her own manner, [do] her housework and shopping" did not constitute evidence that she could concentrate at work); *Rogers v. Colvin*, No. 13-2327, 2014 WL 5474627, at *24 (D.S.C. Oct. 28, 2014) (stating that the plaintiff's testimony that she could engage in limited daily activities is not contradicted by the record; therefore, should not weigh against Plaintiff's credibility). Plaintiff presented as adequately groomed and discussed her activities of daily living with each of her doctors; however, each still found that Plaintiff was emotionally unstable, suffering from depression, and having a difficult time controlling her emotions. ECF No. 18 at 42 (Dr. Ruffing noted that Plaintiff was capable of performing tasks but unreliable in her performance because of "emotional instability"); *id.* at 44 ("Dr. Ruffing's observation of normal orientation, thought process, thought content, grooming . . . do[es] not disprove his observations that Plaintiff would have

significant difficulty [in] . . . maintaining attention and concentration, behaving in an emotionally stable manner, relating predictable in social situations . . . ."); *id.* at 47–48 (Dr. Morton noted Plaintiff's appropriate appearance and ability to communicate but found that Plaintiff would have "marked restriction" in her abilities to interact appropriately and response appropriate to typical work stresses). Accordingly, on remand, the ALJ should make specific findings regarding whether Plaintiff's ability to engage in activities of daily living is inconsistent with her inability to reliably perform work-related tasks.

The court finds that the Commissioner's denial of DIB and SSI benefits on the basis that Plaintiff's ability to handle finances contradicts her inability to work is without substantial evidence. *See Creekmore*, 2015 WL 4771947 at \*6 (reversing determination of no disability as the ALJ accorded too much weight to Dr. Jonas's statement that it was "internally inconsistent" that plaintiff could suffer from bipolar disorder and manage her own finances). Accordingly, on remand, the ALJ should consider whether Plaintiff's ability to manage, or manage with assistance, her DIB or SSI benefits is sufficient to deny her DIB and SSI benefits.

### 3. It is Unclear Whether ALJ Sufficiently Considered Plaintiff's Inability to Afford Medical Care

It is unclear whether the ALJ considered whether Plaintiff's lack of medical care and treatment was based on her inability to afford such treatment, thereby leading to the lack of long-term care. The Fourth Circuit has found that "a claimant may not be penalized for failing to seek treatment he cannot afford; [i]t flies in the face of the patent purpose of the Social Security Act to deny benefits to someone because [she] is too poor

to obtain medical treatment that may help [her]." *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984)). It is up to the ALJ to provide "specific factual findings regarding the resources available to [the plaintiff] and whether her failure to seek additional medical treatment was based on her alleged inability to pay." *See Dozier v. Colvin*, No. 14-0029, 2015 WL 4726949 at *4 (D.S.C. Aug. 10, 2015) (remanding for ALJ to make specific findings on resources available to claimant and whether her failure to seek treatment was based on inability to pay); *Hagerman v. Colvin*, No. 13-1709, 2015 WL 300265 at *5 (D.S.C. Jan. 22, 2015) (remanding where ALJ failed to determine whether inability to pay was the cause of the plaintiff's lack of medical treatment). The ALJ repeatedly noted that Plaintiff's depression was under control when she was taking her medication and her limited therapy sessions; however, the ALJ fails to acknowledge that Plaintiff's treatment ceased when her insurance expired. R. 42–43, 478, 481. Accordingly, upon remand, the ALJ should consider Plaintiff's financial situation and the impact on her ability to seek medical treatment.

        4.   The ALJ's Failure to Follow HALLEX May Have Prejudiced Plaintiff

As discussed at length in the Magistrate Judge's Report and Recommendation, the ALJ did not follow the proper HALLEX procedures. ECF No. 18 at 52–57. While failure to follow HALLEX does not require automatic reversal, there is reversible error when the agency's failure to follow procedures causes prejudice to an individual. *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000); *Way v. Astrue*, 789 F. Supp. 2d 652, 665 (D.S.C. 2011). Due to the ALJ's failure to follow HALLEX, the court must determine if Plaintiff was prejudiced by this failure.

The court finds that Plaintiff may have been prejudiced by the ALJ's failure to follow HALLEX procedures. As the ALJ improperly accorded too much weight to Dr. Jonas's opinion, this HALLEX violation appears to have prejudiced the Plaintiff.

## IV. <u>CONCLUSION</u>

After reviewing the entire record, the applicable law, the briefs of counsel, the findings and recommendations of the Magistrate Judge, and Defendant's objections, this court adopts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference. The Commissioner's objections are without merit. For the reasons setout hereinabove and in the Report and Recommendation, the Commissioner's final decision of no disability is reversed and remanded under sentence four of 42 U.S.C. §405(g) for further proceedings.

**IT IS SO ORDERED**.

                                                     s/ Margaret B. Seymour
                                                     Margaret B. Seymour
                                                     Senior United States District Judge

Columbia, South Carolina

September 28, 2016